IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **JAMES E. KOLENICH** <br> 9435 Waterstone Blvd. #140 <br> Cincinnati, OH 45249 <br><br> Plaintiff, <br><br> v. <br><br> **GANNETT SATELLITE INFORMATION NETWORK INC.** <br> d/b/a Cincinnati Enquirer <br> Serve: CT Corporation System <br> 4400 Easton Commons Way <br> Suite 125 <br> Columbus OH 43219 <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No.: <br><br> **COMPLAINT** <br><br> **JURY DEMAND** |

Plaintiff James Kolenich for his Complaint against the above named Defendant, states as follows:

1. This is an action for defamation of character and false light invasion of privacy. It arises out of false and libelous statements Defendant published about Plaintiff that have caused damage to his reputation.

**Parties**

2. Plaintiff is a resident of this judicial district.

1

3. Defendant is a Delaware corporation whose principal place of business is in Virginia. The Defendant, doing business as the Cincinnati Enquirer, and Cincinnati.com is liable for the acts of its publisher, reporter, and photographer under the doctrines of agency and respondeat superior.

### Jurisdiction and Venue

4. This Court has jurisdiction over this action because there is diversity of citizenship between the parties and the amount in controversy is in excess of $75,000.00 exclusive of interest and costs

5. This Court has personal jurisdiction over Defendant because it conducts business in this judicial district.

6. This Court is the proper venue for this action as the defamatory statements hereafter described were published by the Defendant in this judicial district.

7. Plaintiff is a Traditional Roman Catholic. Traditional Roman Catholics take notice of, and appropriate religious action in response to, serious theological problems with the modern, post 1950s Roman Catholic Church.

8. Plaintiff is an attorney in private practice in the Cincinnati, OH area.

9. Plaintiff's practice specializes in civil rights litigation.

10. In August of 2017 a political rally was held in Charlottesville VA that has received extensive national media coverage.

11. The rally has resulted in litigation in both state and federal courts Virginia.

12. Plaintiff represents several parties in various courts located in Virginia stemming from the political rally.

13. Plaintiffs Virginia clients are often referred to as "white supremacists", "nazis" and so forth.

14. Defendant is engaged in the business of publishing newspapers both in print and online.

15. Among the newspapers published by the Defendant is the Cincinnati Enquirer which is published online at Cincinnati.com and in print in the Greater Cincinnati, OH area.

16. In the March 4, 2018 edition of the Enquirer an article appeared under the headline "Lawyer defends, echoes white nationalists."

17. A substantially similar article was published at Defendant's website, Cincinnati.com on February 26, 2018 under the headline "In a suburban Cincinnati office park, white nationalists have found their lawyer – and an ally."

18. Both headlines defamed Plaintiff by falsely stating that he was in agreement with the political views of his Virginia clients.

19. The accompanying articles were even worse. The articles, intentionally, juxtaposed Plaintiffs explanation of his Virginia clients political positions with Plaintiff's own religious beliefs.

20. Defendant did this even though Plaintiff had explained his religious position and the theological importance of various contemporary political questions clearly during his on camera interview.

21. The article goes so far as to state, falsely, that Plaintiff represents his Virginia clients because his views align, at least in part, with those client's political views.

22. The article further states, falsely, that Plaintiff is part of a "loose affiliation of racists, white nationalists, and anti-semites".

23. The aforesaid was false, and known to be false when published, as Plaintiff had attacked the lack of Christianity among white people in general, and his Virginia clients in particular during his on-camera interview.

24. Plaintiff neither said or did anything that a reasonable person could have interpreted as justifying a claim of membership in any loose affiliation of racists.

25. Plaintiffs comments about immigration specifically placed immigration policy in the religious context of being a Divine punishment for Europeans current apostasy from Christianity.

26. Nevertheless, Defendant omitted, paraphrased, or buried Plaintiff's religious statements under a mountain of anti-Christian symbolism and statements by persons other than Plaintiff, that has the overall effect of making it appear, falsely, that Plaintiff is attempting to use religious belief as an excuse for irreligious hatred and bigotry.

27. The above is false and defamatory and was known to be so when published.

28. The above presentation of plaintiff's interview was a "calculated falsehood" that was designed to, and did, place the plaintiff before the public in a "false light".

29. To call plaintiff a nazi or white supremacist is a statement that inevitably brings scorn, ridicule, and shame upon the plaintiff and does irreversible damage to his reputation.

30. The above places plaintiff before the public in a manner that is highly offensive to a reasonable person.

31. Defendants statements to it's readers that Plaintiff 's religious views align with those of his atheistic Virginia clients views, that Plaintiff is part of a "loose affiliation of racists, white nationalists, and anti-semites", and the other statements listed above was per se defamatory.

32. Defendant published the false and defamatory statements with knowledge that they were false or with reckless disregard for whether it was false.

33. Defendants article, including it's false and defamatory statements listed above was subsequently published or cited on numerous websites, including but not limited to abajournal.com and blogs.findlaw.com

34. In each place where Defendants article was published or referenced it was taken by commenters in a non or even anti-religious sense rather than the religious points that Plaintiff had actually expressed.

35. As a direct and proximate result of defendant's defamation of his character and presentation of plaintiff in a false light, Plaintiff has suffered, and

continues to suffer, humiliation, embarrassment, anxiety, mental anguish, emotional distress, and damage to his reputation and career.

**WHEREFORE**, Plaintiff demands judgment against the Defendant as follows:

A. Compensatory damages in an amount to be shown at trial, but in excess of $75,000.00;

B. Punitive damages;

C. Costs incurred in this action including reasonable attorney's fees;

D. Prejudgment interest;

E. Such other and further relief as the Court may deem just and proper.

Dated: **February 26, 2019**

Respectfully submitted,

**THE LEWIS LAW FIRM, INC., LPA**

By:_____/s/ Cornelius "Carl" Lewis_____
**Attorney for Plaintiff**

**Cornelius "Carl" Lewis, Esq.**
**THE LEWIS LAW FIRM, INC., LPA**
119 East Court Street
Cincinnati, Ohio 45202
Phone: (513) 632-9542
Fax:    (513) 721-5824
e-mail:CarlLewisLaw@gmail.com
Ohio Supreme Court Reg. #0055700